■ In the Matter of ROBERT METACARPA et al., Appellants, v JOHN A. JOHNSON, as Commissioner of the New York State Office of Children and Family Services, et al., Respondents. (Proceeding No. 1.) In the Matter of BEN TERRUSA et al., Appellants, v BRIAN J. WING, as Commissioner of the New York State Office of Temporary and Disability Assistance, et al., Respondents. (Proceeding No. 2.) [702 NYS2d 673] —Carpinello, J. Appeal from a judgment of the Supreme Court (Keegan, J.), entered November 19, 1998 in Albany County, which dismissed petitioners' application, in a proceeding (No. 1) pursuant to CPLR article 78, to review determinations of respondent Commissioner of Children and Family Services transferring petitioners' employment from the disbanded Department of Social Services to the Office of Children and Family Services.

Appeal from a judgment of the Supreme Court (Keegan, J.), entered November 19, 1998 in Albany County, which dismissed petitioners' application, in a proceeding (No. 2) pursuant to CPLR article 78, to review determinations of respondent Commissioner of the Office of Temporary and Disability Assistance transferring petitioners' employment from the disbanded Department of Social Services to the Office of Temporary and Disability Assistance.

In 1997, the Department of Social Services (hereinafter DSS)

was dissolved and its functions were distributed among one existing State agency—the Department of Health (hereinafter DOH)—and two newly created State agencies—the Office of Children and Family Services (hereinafter OCFS) and the Office of Temporary and Disability Assistance (hereinafter OTDA) (*see*, L 1997, ch 436). Petitioners in these two CPLR article 78 proceedings are all former employees of DSS' Division of Quality Assurance and Audit holding the positions of Senior, Associate or Principal Social Services Management Specialist. Upon DSS' dissolution, petitioners in proceeding No. 1 were transferred to OCFS and petitioners in proceeding No. 2 were transferred to OTDA. They claim that because they were engaged in Medicaid audit functions which were transferred to DOH, Civil Service Law § 70 (2) mandates that they be transferred to that particular agency. Supreme Court dismissed both petitions, prompting these appeals. Our inquiry is limited to whether the determinations transferring petitioners to either OCFS or OTDA were arbitrary, capricious or affected by error of law (*see*, *Pell v Board of Educ.*, 34 NY2d 222, 231; *Matter of Howard v Wyman*, 28 NY2d 434, 438; *see also*, CPLR 7803 [3]). Upon review of the record, we are unable to so conclude and accordingly affirm.

The transfer of employees under Civil Service Law § 70 (2) must proceed in accordance with the State Department of Civil Service State Personnel Management Manual (hereinafter Personnel Management Manual) which provides that "[t]he agency losing the function [DSS], after consultation with the gaining agenc[ies] [OCFS and OTDA] and the appropriate control agencies, determines which employees in which titles are 'substantially engaged in the performance of the function' to be transferred" (Personnel Management Manual, at 1; *see*, Civil Service Law § 70 [2]). Those employees so identified as being "substantially engaged" are offered transfer to the gaining agency. Petitioners protested their inclusion on the list of employees to be transferred to OCFS or OTDA and their exclusion from the DOH list.

While it is true that the Medicaid audit function of DSS was transferred to DOH (*see*, L 1997, ch 436, § 122 [e]) and that petitioners had each been performing or supervising Medicaid related audits for a significant period of time, DSS' determinations of which employees were "substantially engaged" in the functions being transferred had to be consistent with the guidelines set forth in the Personnel Management Manual (*see*, Personnel Management Manual, at 3). According to former DSS personnel actively involved in the transfer decisions, those

DSS employees who worked in defined *program units* within DSS (2,285 out of the total 4,450 DSS employees) followed those units when entire program units were transferred pursuant to the first of three general guidelines.[1] However, petitioners were determined *not* to work in a particular program unit because they carried out functions and duties (i.e., auditing) which supported a variety of programs. Indeed, the record contains evidence that most petitioners performed audits in program areas other than Medicaid. Furthermore, petitioners' respective titles defined their duties very broadly, and none worked in a title restricted to one particular program area. Respondents' interpretation of this first guideline as excluding petitioners' respective titles is by no means irrational.

Thus, petitioners were included among 2,165 employees identified by former DSS personnel as holding generic "administrative support positions", which "comprise the infrastructure of every State agency and serve to support the performance of program functions". Petitioners were transferred to either OCFS or OTDA based on their general auditing functions, which were determined by former DSS personnel as being necessary "to meet the operating and staffing needs of [OCFS and OTDA]". Specifically, in transferring petitioners, former DSS personnel were guided by the third of the general guidelines contained in the Personal Management Manual. This guideline (delineated as paragraph "c") states: "Where neither a. or b. above apply, interdepartmental titles which primarily provide support of a variety of functions * * * shall not generally be considered to be substantially engaged in the function being transferred" (Personnel Management Manual, at 3).[2] Again, respondents' interpretation of this third guideline as *covering* petitioners' respective titles is not irrational. Relatedly, former DSS officials making the transfer decisions determined that petitioners' respective expertise and experience relating to Medicaid were not necessary for the continuation and integrity of the Medicaid program which had been transferred to DOH.

---

1. This guideline (delineated as paragraph "a") reads: "All titles in a specific and discrete organizational entity or a specific and discrete program entity such as a facility, institution, a division or bureau, must be considered to be 'substantially engaged' when the entire function performed by that organizational or program entity is being transferred" (Personnel Management Manual, at 3).

2. The second of the three guidelines (i.e., paragraph "b")—which pertains to employees who hold specialized titles—was found by former DSS personnel to be inapplicable to petitioners' transfers as none holds a specialized title. Petitioners do not seriously contest this finding, and we likewise find it to be a rational application of the guidelines.

Several petitioners tacitly acknowledge this latter point when they averred that the same could be said for other auditors who were transferred to DOH.

Under these circumstances, an attack on the determinations denying petitioners' respective protests as irrational or arbitrary cannot stand. Simply stated, petitioners are employed as auditors in social service areas. That each may have spent a significant amount of time auditing in the area of Medicaid does not ipso facto make them "Medicaid auditors" for the purpose of transfer under Civil Service Law § 70 (2) or the guidelines outlined in the Personnel Management Manual. Because the record plainly reveals that nonarbitrary factors resulted in petitioners' transfers (*see, Pell v Board of Educ.*, 34 NY2d 222, 231, *supra*), Supreme Court's determinations dismissing the petitions should be affirmed in all respects.

Petitioners' remaining contentions, to the extent not specifically addressed, have been reviewed and rejected.

Cardona, P. J., Crew III, Spain and Mugglin, JJ., concur. Ordered that the judgments are affirmed, without costs.

